IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALLEN SMITH  
  V.  
TROY LEVI, WARDEN  
CUSTODIAN, F.D.C.

: CIVIL DOCKET NO. 08-cv-961
:
:
:
:

## PETITION PURSUANT TO HABEAS CORPUS
## RELIEF UNDER 28 U.S.C.§ 2241 (a)(c)(2)(3)

   This Petitioner, Allen Smith, states that pursuant to **Title 28 U.S. C.§ 2241 (a)(c)(2)(3)**, this court has jurisdiction to adjudicate this Petitioner's claims, and upon conclusion of said review and adjudication, this court has authority to take matters of Judicial authority, and refer the needer **ORDER** to the Custodian/Warden, Troy Levi, to immediately release this Petitioner, from unlawfulcustody that lead upon this Court's findings, that an unlawful restraint on Liberty issue has forced Petitioner under duress to continue an illegal unlawful restraint on Liberty, to the Custodian of F.D.C. Philadelphia aformemntioned herein. Whereas this Petitioner requests that action be taken on the unlawful restraint on Liberty, based on Judicial appropriateness, and may The Honorable Court grant this petition. See: **Braden v. 30th. Judicial Circuit Court of Kentucky**, 410 U.S. 236, 9 L. Ed. 2d 433, 93 S. Ct. 11223 (in pertinent part), 28 U.S.C. § 2241 (a), which authorizes, writs of Habeas Corpus to be granted, by the District Courts within their respective jurisdiction. Jurisdiction is limited to petitions filed by person physically present within the territorial limits of the District Court. See: U.S. ex. Rel Armstrong v. Wheeler, 3 21 F. Supp. 417 (D.C. PA 1970); Ptitioner must be in custody within that distrtict before that court can hear a Habeas Corpus proceeding; Jones v. cunningham 371 U.S. 236, 9 L Ed. 2d 285 83 S. Ct. 373 says "The Writ of Habeas Corpus can reach behind prison walls and iron bars, but it is not a static, narrow or formalistic remedy, it's scope also includes the prosecution of individuals against corrosion of their right to be free from wrongful restraint upon their liberty.

## CHARGES

   On July 26, 2006 a Grand Jury indictment was filed charging Allen Smith with Conspiracy, in violation of: 18 U.S.C. §371, Bank Fraud, in violation of: 18 U.S.C. § 1344, Aggravated Identity Theft, in violation of, 18 U.S.C. § 1028(a), and Aiding and Abetting, in violation of 18 U.S. C. 2.

-1-

## STANDARDS TO GRANT PETITION

In Re: <u>Dorsainvil</u> 119 F3d 245 (3rd Cir. 1997) section § 2241 states: Writs of Habeas Corpus may be granted by the Supreme Court, and any Justice thereof, the District Court, and any Circuit Judge 'within their respective jurisdictions', to prisoners in custody, in violation of the Constitution, or Laws, or Treaties of The United States, See: <u>Felker v. Turpin</u> 11b S. Ct. 2333, 135, L. Ed. 2d. 827 (1996). The Government has underminded Petitioner's Constitutional Rights being violated by Inspector Khary Freeland, and the Government would pray, that this court not give the Petitioner (Allen Smith) the right to challenge the legality of detention under 28 U.S.C. § 2241.

The District Judge has the responsibility to recognize the priciples of Fundamental Fairness, and failed to correct such error, if there is no Constitutional Rights that protects the Petitioner at the beginning stages, 'then no matter how much the reliability of the trail proceeding was, it still leaves the nature that the 4th, 5th, and 14th Amendments makes these trail proceedings. To borrow a phrse, "This puts the cart before the horse".

In <u>Foucha v. Louisianna</u>, 504 U.S. 71, 80, 118 L. Ed. 437, 112 S. Ct. 1780 (1992), states: "(Freedom from bodily restraint, has always been the core of the liberty protected by the 'Due Process' clause from arbitrary government action"). Id, at 90 118 L. Ed. 2d 437, 112 S. Ct. 1780 (Kennedy J. dissenting), ("As incarceration of persons is most common, and one of the most 'feared instruments' of State oppression and State indifference, we ought to acknowledge at the outset that freedom from this restraint is 'essential' to the basic definition of Liberty in the 5th and 14th Amendments of The Constitution").

The Due Process clause of the 5th. Amendment provides that: "No person shall be deprived of, Life, Liberty, or Property, without due process of law....".

The Petitioner asks His Honorable Judge to keep mindful that Petitioner has a Constitutional Right to Habeas Corpus, secured by the Suspension Clause. U.S. Constitution Article I § 9, clause II.

In <u>Rasul v. Bush</u> 542 U.S. 466, 159 L. Ed. 2d 548, 124 S. Ct. 2686 (2-004)(in pertinent part) (,)( Held that Petitioners have a Constitutional Right to Habeas Corpus secured by the Suspension Clause, U.S. Constitution, Article I, line 2 reasoning that: " If a person has a right to Writ of Habeas Corpus, he cannot be deprived of the priveledge by an omission in a Federal Jurisdictional Statute". See also: <u>Coleman v. Thompson</u> 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), The miscarraige of justice exception, however, applies only to the case where the miscarraige is tied to Petitioner's actual innocence: See also, <u>Mcnabb v. United States</u> 318 U.S. 322, 347, 63 S. Ct. 608, 616, 87 L. Ed. 819 (1943).

Petitioner requests that the Court, 'grant' this petiton pursuant to **28 U.S.C. 2241 (a)(c)(2)(3),** and adjudicate this Petitioner's claim that causes a restaint on liberty; with an unlawful custody; under a miscarraige of justice.

## ARGUMENT

The Petitioner asserts that his prsumption of innocence were violated from the beginning of these criminal proceedings, by the District Judge, based on (Postal Inspector Khary Freeland) conduct concerning his sphere of official responsibility within the law, that caused a deprivation of Constitutional Rights, and within the contention that the 4th, and 14th Amendments, due process guarantee, supports his claims, when (Inspector Freeland's) determination to designate himself as an 'authorized' of The United States to investigate criminal matters outside of the Postal Inspector's power approvedby Congress. See: <u>18 U.S.C. 3061</u> (in it's entirety).

Petitioner claims that Postal Inspector Khary Freeland, and the Courts , in condoning the prosecutor's illegalities have vacated their positions of trust that they've sworn to uphold. Indeed they are held to a very high standard of conduct. Justice Sutherland in <u>Berger v. United States of America</u>, elegantly states:

> "The United States Attorney is the representative not of an ordinary party to a controversy, but, of a Sovereign whose obligation to gover impartially, is as compelling as his obligation to govern at all, and whose interests thereor in a Criminal prosecution is not that it shall win a case but, that Justice shall be done. It is as much his duty to refrain from improper methods calculated to produce a wrongful convition, as it is to use every legitimate means to bring about a just one".

Petitioner will show a Totality of events that would violate Mr. Allen Smith Constitutional Right by Insector Freeland action outside of the powers designated to him under Federal Law.Petitioner, also address the issues that ties Inspector Freeland violations to Mr.Smith actual innocents . Their will be no doubt as to the violations that will allow this court to grant this Petitioner relief to the unlawful restraints that this miscarraige of justice currently holds Mr. Smith under. Petitioner prays this court not turn its face to the miscarraige of justice that stem from these proceedings, but infact release Mr. Smith immeadily from this unlawful Writ that denies him the liberty that Inspector Freeland unlawfully seized.

## AFFIDAVIT

I, Allen Smith currently detained at The Federal Detention Center, 700 Arch Street, Philadelphia, PA 19105, Certify that the statements set herein is true and accurate to the best of my knowledge and beliefs. Confirmed and Sworn on this 20th day of February 2008, _____ , _____ .

Postal Inspectors are given investigative power to investigate criminal matters related to the Postal Service and the mails. Postal Inspectors can investigate Fraud and Identity Theft cases if the Postal Inspector can establish a link or 'Nexus' between the crime, mail or Postal services. There can be an agreement reached between a Postal Inspector and The Attorney General to enforce other laws of The United States if The Attorney General determines that such violations have a detrimental effect upon the operations of The Postal Services. (See: 18 U.S.C. 3061)(b)(2).

Inspector Khary Freeland states during Direct Testimony, that he received a phone call from Commerce Bank, and was referred to investigate. See:(Direct Examination of Khary Freeland, Trial Transcript 56:6,7). When Inspector Freeland describes to the Grand Jury, generally what is it that he does as a Postal Inspector, he states:" I investigate Identity Fraud and Mail Fraud, that has a link to The U.S. Mail." Inspector Freeland also led The Grand Jury to believe he was The Case Agent to a group of individuals led by Charles White. (See: Postal Inspector Khary Freeland Grand Jury testimony, transcript 2:20-25).

Inspector Freeland never established the link between Charles White's alledged Fraud Ring, and U.S. Mails or Postal Services. Petitioner read Khary Freeland's Grand Jury Testimony as he claims:" Checks were being mailed to PECO ( Philadelphia Electric Company ) and soon after the customer's accounts were being victimized by some unknown parties." This was the only link or 'Nexus" offered to the Grand Jury as the connection to The U.S. Mails or Postal Services that would allow Inspector Freeland to be operating within the scope of his powers to investigate as a Postal Inspector. Petitioner would like to remind this Court that Inspector Freeland offered his Frand Jury testimony on July 12, 2006, long after Inspector Freeland would inflict numerous violations of The Constitutional rights allowed the Petitioner.

-4-

Inspector Freeland conducted himself as a person with no authority instesd of a Postal Inspector with authority to investigate these crimes, because he failed to show a 'link or Nexus' between the istant offenses and The U.S. Mail or Postal Services. Postal Inspectors powers are narrow compared to law enforcement and none when there is no link or nexus or does not effect The Postal Service. (See: U.S.C. 3061)(in it's entirety). Inspector Freeland acted as a less experienced officer, acting under the color of law which he had no jurisdiction of. Inspector Freeland built a case, but refused to turn over the investigation to the proper Agencies that had Jurisdiction to investigate crimes within their respective jurisdictions.

There was no nexus that would've made this case a postal matter, and therefore invalidated Inspector Freeland's investigation. Both, Postal Inspectors' Freeland and Thomas testified to the Jury that their duties as Postal Inspectors were that they investigate Fraud cases that involves the U.S. Mail or Postal Services. The only Nexus described in this case would be PECO Energy's customers who accounts at Commerce Bank, were being victimized by Identity Theft.

Inspector Freeland fell short in establishing the Nexus between the conspiracies in the instant case and PECO Energy. Inspector Freeland's Grand Jury testimony would suggest that he 'solved' the case alledgedly given unto him by Commerce Bank, that was affecting customers of PECO Energy. Inspector Freeland states to the Grand Jury during testimony:" Checks were being mailed to PECO, and something was happening, we didn't know what. And the checks were... and the customers' accounts were being compromised, victimized by unknown parties AT THAT TIME. So I began an investigation into essentially what was happening there. How was...how was the customers' information getting out there, and who was perforrationg thr accounts." See:(Khary Freeland's Grand Jury Testimony).

Petitioner challenges that he was not a part of any conspiracy that involved PECO Energy whose customers' accounts were being compromised that would have given Inspector Freeland the Nexus he needed to make his Investigation valid under Federal Law. In fact Petitioner claims that there was no link to the conspiracies he was charged in with, neither PECO Energy, nor The U.S. Mails or Postal Services, which proves that Inspector Freeland was unlawful in his investigation of the instant case just as well as the evidence used to convict in this case.

In March 2005, Inspector Freeland learned about the instant case from Kelly Taylor and Terry Hughes. The two gave Inspector Freeland detailed information about the operations of the alledged Fraud Ring. Both Taylor and Hughes admittedly gave statements about themselves and others of a scheme to defraud Commerce Bank to Inspector Freeland. Terry Hughes made a call to the F.B.I. under no duress to seek protection against one of the targets of the instant case after a fight between them. Kelly Taylor had a long arrest record for cashing checks at Commerce Bank Drive-thru windows and was willing to cooperate with Inspector Freeland when he went ot M.C.C.F.(Montgomery County Correctional Facility) to interview Kelly Taylor in early March of 2005 (See: interview of Kelly Taylor by Inspector Khary Freeland, March 3, 2005)

In early March 05' Inspector Freeland learned through Kelly Taylor and Terry Hughes, infact this was not the group that was victimizing PECO Energy customers through the mail, but that there was a possible illegal conspiracy as to Commerce Bank. Everything that Inspector Freeland learned about this conspiracy would suggest that the checks came from a bank and Select Financial Services, not PECO Energy. This was information gathered in March 2005 when now there were other cooperating witnesses linked to the Fraud Ring who began to proffer with Inspector Freeland, namelu Rachael Lukovsky and Celia Goldberg.

Inspector Freeland learned by April 2005 that this alledged Fraud Ring was not the ones responsible for compromising the PECO Energy customers accounts. He learned that this Fraud Ring dealt directly with banks. The information that Inspector Freeland received was sufficient enough to turn this case over to any Authorized Agency of Law Enforcement that would have had jurisdiction to investigate the instant case. Inspector Freeland proved through unlawful tactics that he is not a well trained Postal Inspector, but indeed reckless, when he discovered that there was no Nexus between the instant case and The U.S. Mail and Postal Services.

Inspector Freeland began an "unlawful" undercover operation on April 12, 2005, that involved another Postal Inspector by the name of Yvette Thomas. With no Nexus between the alledged Fraud Ring and The Mails or Postal Services, the undercover operation headed by Inspector Freeland, was the first of many unlawful events that were conducted by Inspector Freeland. Inspector Yvette Thomas went undercover as a "favor" to Inspector Freeland to gather information to further corroberate the statements given by Terry Hughes and Kelly Taylor. This would be a favor outside the powers given to the Postal Inspector, and would indeed be called a "Felonious Favor". (18 U.S.C.§1503 Endeavor to Influence and to Intimidate a witness and obstruct the Asministration of Justice).

-6-

When Postal Inspector Yvette Thomas undercover endeavor was concluded there was still no evidence that the targets of the undercover operation being, Antoine Norman and Charles White, ever received anything regarding these conspiracies as to PECO Energy or The Postal Services. The investigation was then two weeks before the last criminal act mentioned in the indictment, and have yet to discover a link or Nexus to the Postal Services, let alone PECO Energy.

Inspector Freeland found Lisa Smith, who would be the last cooperating witness/check runner. On June 24, 2005, Lisa Smith was interviewed at Riverside Prison, where she was beingheld on charges unrelated to the instant case in Philadelphia,PA by Inspector Freeland and Inspector Ninan. Lisa Smith was interviewed pursuant to alledged information linking her to The Fraud R ing in the unstant case, Lisa Smith did not link herself, nor did she link The alledged Fraud Ring to neither The Postal Services nor PECO Energy.

On or about, November 8,2005, Inspector Freeland executed a Federal Search Warrant with a F.B.I. agent made in the direction of The Federal Bureau of Investigation, which in fact is a violation of the powers given unto a Postal Inspector by, The Board of Governers in itself. Still then, two years after the beginning of the investigation there was no link or Nexus to The U.S. Mail, or Postal Services. Under Title 18 U.S.C. 3061 there has to be a link or Nexus to The Postal Services in order for the search of 5311 Oxford Avenue to be "executed" by Postal Inspection Services. Even now after the search of 5311 Oxford Avenue, and seizure of evidence obtained therein, there was nothing linking or confirming a Nexus between the instant case and Postal Services.

## CONCLUSION

On July 12,2006, Inspector Freeland went before The Grand Jury to seek an Indictment through his own testimony. He told many stories about conspiracies and crimes to The Grand Jury, the story that the Petitioner has an interest in, is the story that gives Inspector Freeland the Nexus neccesary for the Grand Jury to Properly return an Indictment, charging crimes against The United States of America, through the Mails or Postal Services. There are two factores that the Petitioner asks This Honorable Court to consider, One, the question:"Inspector Freeland, would you please describe to The Grand Jury generally what it is that you do with The U.S. Postal Inspection Services?", and Two, the answer:"I investigate Identity Fraud, and Mail Fraud that has a link to the U.S. Mail".

-7-

Inspector Freeland committed a series of violations throughout this entire investigation, as the Petitioner pointed out. The Courts have seen and heard all of the evidence presented in the instant case and the only time we hear the name PECO Energy is during Investigator Freeland's Grand Jury Testimony. There was no "Nexus" between the instant case and Postal Services established to validate the actions undertaken by The Postal Inspectors that were directly involved with the instant case and Inspector Freeland. Petitioner asks this Honorable Court to show and provide any testimony or evidence that would be construed as a 'link' or 'Nexus' that connects the instant case with The Postal Services or anythung therof, that would be sufficient to activate the powers of The Postal Investigation Services, in investigating and prosecuting the Petitioner( Allen Smith)).

Petitionner has shown how much of the evidence taken before the Grand Jury was unlawfully obtained, by Postal Inspector Khary Freeland. Inspector Freeland never established the 'Nexus" between The Postal Services, and any of the alledged members of the conspiracy. Petitioner also exposed the fact that Inspector Freeland lacked the Jurisdictionn to investigate, and prosecute members of the instant case when there was no link or 'Nexus' to be fund pertaining to the instant case and The Postal Services.

Petitiner asks this Honorable Court, to GRANT Petitioner's Habeas Corpus Relief sought, due to the miscarriage of Justice that is tied to Petitioner's actual innocence.

### RELIEF SOUGHT

Petitioner asks that this Honorable Court for an immediate release which would correct the Miscarraige of Justice that violated Petitioner's Liberty. If relief is denied, Petitioner respectfully requessts an Evidentary Hearing pertaining to the Jurisdiction of Postal Inspector Khary Freeland be held in open court.

Respectfully Submitted

Pro-se _____
Allen Smith
Federal Detention Center
700 Arch Street
P.O. Box. 562
Philadelphia,PA. 19105

-8-